(59 Misc. Rep. 595.)

### MILTON M. SCHNAIER CO. v. GRIGSBY.

(City Court of New York, Trial Term.    June, 1908.)

1. LICENSES—PLUMBERS—CORPORATIONS—"PERSON."

Laws 1896, p. 1052, c. 803, making it unlawful for any "person" to carry on the business of an employing or master plumber without a certificate of competency, is not applicable to a corporation, conducting such a business, which employs only persons licensed and registered according to law.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

2. MECHANICS' LIENS—NOTICE OF CLAIM.

That a notice of lien states a claim on contract and that the proof is on a quantum meruit is no ground for denying the lien.

Action by the Milton M. Schnaier Company against Emilie B. Grigsby to foreclose a mechanic's lien.    Judgment for plaintiff.

Milton Mayer, for plaintiff.

L. Laflin Kellogg, for defendant.

McAVOY, J.    The plaintiff is a corporation engaged in the plumbing and general contracting business.    It sues upon a claim for items consisting of plumbing work and labor and materials incidental thereto.    A lien was filed for the claimed value of the materials and labor so furnished in accordance with "a contract between the lienor and owner," and this action seeks a foreclosure of such lien and a judgment of sale thereunder.    Besides the defendant's resistance upon the ground of an excessive price for both material and labor, it is urged in her behalf that this plaintiff cannot, because of the prohibition contained in the statute "regulating the business of master or employing plumbers" in this city, recover any sum whatever for the work concededly performed.

This enactment, held to be within the "police power" and a "health statute" (People v. Warden, 144 N. Y. 529, 39 N. E. 686, 27 L. R. A. 718), provides that it shall not be lawful for any person to conduct business as an employing or master plumber unless he has obtained certificates of competency and registration as therein provided.    Laws 1896, p. 1052, c. 803.    This statute has been twice before the Court of Appeals; and it has been there determined, first, that recovery for work performed without compliance by the claimant with the statutory mandate would not be permitted (Johnston v. Dahlgren, 166

N. Y. 354, 59. N. E. 987); and, second, that a requirement that all members of a copartnership carrying on the plumbing trade should be licensed and registered was unconstitutional as to such a partner as was wholly engaged in the clerical work of such a firm, it appearing that the partner solely engaged in the supervisory work of the mechanical and technical department was a licensed and registered master plumber (Schnaier v. Navarre Hotel & Imp. Co., 182 N. Y. 83, 74 N. E. 561, 70 L. R. A. 722, 108 Am. St. Rep. 790).

The precise point raised here has not been adjudicated by any of our appellate courts; but I think the proposition arising in analogous instances has been sufficiently considered and commented upon to make application of the reasoning therein to this case comparatively a simple process. While the term "person" includes both a corporation and a joint-stock association (Stat. Const. Law [Laws 1892, p. 1487, c. 677] § 5), yet by section 1 of the same law such statutes are excepted from the definitions therein, as the context of their language construed indicates that a different meaning or application was intended. Plainly such is this statute and its inhibitory provision. The act nowhere mentions a corporation, and it cannot be said that this is a casus omissus, because the real reason is apparent in the nature of things. Of what avail to require the corporate entity to take a qualifying examination? The Legislature will not be presumed to have either enjoined or prohibited that which could not take place; i. e., compliance with the statute, or the performance of plumbing work by the corporate entity. "It would be quite futile and unnecessary," says Mr. Justice Laughlin, in People v. Woodbury Dermatological Institute, 124 App. Div. 877, 109 N. Y. Supp. 578, "to prohibit something which could not be done. Therefore it may well be said that here the term 'person' has not the construed, but the natural, meaning; and I so decide."

The corporation being entitled to carry on such business as is within its granted powers by its officers and agents, it should be held merely to such of the requirements of this act as will conserve the spirit and intent of its provisions, which are the proper restriction of the supervision of the trade and the employment of subagents thereof to persons qualified by experience and technical skill for such labor or management. People v. Woodbury, etc., supra. The court there, speaking of the legislative requirement that persons practicing medicine or advertising to practice medicine should be lawfully authorized and registered to practice that profession, said:

"Strictly speaking, of course, a corporation can neither qualify to practice medicine nor administer medical nor surgical aid. If the Legislature enacted the prohibition against practicing medicine and advertising to practice medicine upon the theory that a corporation could not practice medicine, then there would be no reason for inferring that it intended to prohibit something which could not be done, for that would be quite unnecessary. As I view it, the only theory upon which this prohibition can be deemed to extend to corporations is that the Legislature recognized that, while corporations may not obtain diplomas and register as physicians, or actually treat patients or perform surgical operations, they may, through agents and employés, as all corporations are obliged to perform their functions, practice medicine by providing accommodations for patients and facilities for their care and treatment and physicians and surgeons to administer to them. This is, and for many years

has been, done in hospitals, dispensaries, infirmaries, and sanitariums, with which the Legislature is presumed to have been familiar."

As a corollary from the principle there enunciated, and considering the fact that this legislation is highly penal, and should not be construed to include any person or any act not expressly prohibited by its wording, it seems to follow that, where a corporation employs only persons licensed and registered pursuant to the statutory requirements under discussion, it complies with the spirit of the law, and its recovery upon a claim for services and materials should not be thereby defeated. Such interpretation gives full force and effect to the statute, it meets the evils intended to be met, and, moreover, subserves all the interests of the public and carries out the intent of the Legislature.

Similar statutes have been passed and their effect construed in England as early as 1756. In the case of Raymond v. Chase, Burr. 2, Lord Mansfield said, construing a statute with reference to a requirement as to licenses for brewers:

"The general policy of the act was to have trades carried on by persons who had skill in them. Now here the personal skill of the defendant makes no real difference in the case. For the person who is skilled acts everything, and receives no directions from this man. He never did nor was to interfere. In many considerable undertakings it is absolutely necessary to take in persons as partners to share the profits and risk the losses; and the general usage and practice of mankind ought to have weight in determinations of this sort, affecting trade and commerce and the manner of carrying them on. * * * It is exactly the same thing as to the trade, in every iota, 'whether this partner has or has not served an apprenticeship.'"

There can be no doubt but that this statute is in derogation of the common-law rights of a citizen, and the only possible ground upon which it can be supported is that it is a legitimate exercise of the police power of the state. Upon this account it cannot be claimed that its highly penal provisions should be extended to a corporation, when it is obvious that the corporation, acting through agents qualified to perform the work in question, is not transgressing any of its provisions designed to protect the health of the community.

The case of Bronold v. Engler, 121 App. Div. 124, 105 N. Y. Supp. 508, contains a dictum which seems to lean toward a result opposite to the conclusion reached by this court; but I am not prepared to follow that expression of opinion, since the point was not litigated, and, therefore, cannot be said to have been expressly decided.

Upon the right of the plaintiff to recover the amount claimed, I have considered carefully the arguments contained in the briefs and examined the testimony with reference to the prices charged for the various items of work; and I award judgment, therefore, as follows: Under bill No. 1, consisting of labor and materials in the plumbing work, the sum of $322.93; under bill No. 2, such items not being contested, except as to the competency of proof, the sum of $27.75; under bill No. 3, the sum of $4.75; under bill No. 4, the sum of $43.11; under bill No. 5, the sum of $124.35; under bill No. 6, the sum of $81.42; and under bill No. 7, consisting of carpentry work, the sum of $86.32—making a total of $690.45.

Upon the point made that, because the lien states a claim on contract and that the proof is upon a quantum meruit, the lien should be disallowed, I am referred to no adjudicated case which holds that such is the rule of law. The contract expressed is a request for performance of the work and an implied promise to pay, and I think that is sufficient within the requirements of the lien law. As to the claim that, because of excessive charges, the lien should be disallowed for falsity, I do not think there is evidence sufficient to hold that the excess is so great over the allowance as to make it appear false and fraudulent as a matter of law; and I therefore find the plaintiff is entitled to a judgment establishing a lien for the amount above set forth, and for the usual decree of sale, with costs.

Judgment for plaintiff.